IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

LAUREN COYLE, on behalf of          :       HON. JEROME B. SIMANDLE
herself and all others              :
similarly situated,                 :       Civil No. 08-02797 (JBS)
                                    :
            Plaintiff,              :
                                    :
       v.                           :            **OPINION**
                                    :
HORNELL BREWING CO.;                :
FEROLITO VULTAGGIO & SONS;          :
ARIZONA BEVERAGE COMPANY LLC;       :
and BEVERAGE MARKETING USA,         :
INC.                                :
                                    :
            Defendants.             :
_____    :

APPEARANCES:

Lynne M. Kizis, Esq.
Daniel R. Lapinski, Esq.
Philip A. Tortoreti, Esq.
WILENTZ, GOLDMAN & SPITZER
90 Woodbridge Center Drive
Woodbridge, NJ 07095
     -and-
Michael D. Halbfish, Esq.
TUNNEY & HALBFISH
208 Main Street
Woodbridge, NJ 07095
     Attorneys for Plaintiff

Robert P. Donovan, Esq.
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102
     Attorney for Defendants

**SIMANDLE,** District Judge:

**I.   INTRODUCTION**

This matter comes before the Court on the motion of Hornell Brewing Company, Ferolito Vultaggio & Sons, Arizona Beverage Company, LLC, and Beverage Marketing USA, Inc. (collectively, "Defendants") to dismiss Plaintiff's claim.  [Docket Item 93]. Plaintiff Lauren Coyle ("Plaintiff") filed this putative class action suit against Defendants on behalf of herself and others similarly situated claiming that Defendants wrongfully labeled their beverages as "100% NATURAL" when the beverages contained high fructose corn syrup ("HFCS").

Defendants first ask the Court to dismiss Plaintiff's claim pursuant to the doctrine of primary jurisdiction, arguing that the case should be referred to the United States Food and Drug Administration ("FDA") given the agency's unique expertise and experience in the field.  Second, Defendants assert that Plaintiff is precluded from seeking restitution under an unjust enrichment theory due to an available remedy at law.  Third, Defendants contend that Plaintiff's breach of express and implied warranty claims should be dismissed because Plaintiff failed to provide Defendants with notice of breach before filing suit. Defendants lastly argue that any portion of the claim based on

2

actions occurring more than four years before the filing of Plaintiff's complaint is barred by the statute of limitations.

For the reasons set forth below, the Court denies Defendants' motion to dismiss under the doctrine of primary jurisdiction, but will stay this action for a period of six months and refer the question of whether HFCS qualifies as "natural" to the FDA.  The Court also denies Defendants' motion to dismiss Plaintiff's claims for unjust enrichment and breach of express and implied warranty of merchantability, but will dismiss any claim arising out of purchases made before April 21, 2004 under the applicable statute of limitations.

## II.  BACKGROUND

### A.    Factual Allegations in First Amended Complaint

Plaintiff brings this proffered class action suit against Defendants, who are responsible for manufacturing, brewing, distributing, and selling Arizona Iced Tea beverages, alleging that Defendants should not have labeled their products as "100% NATURAL" because they contain the ingredient HFCS.  Plaintiff claims that over the six years prior to bringing suit, she purchased Arizona Iced Tea products because she believed them to contain only natural ingredients, which according to Plaintiff excludes anything containing artificial colors, flavors, preservatives, chemicals, or highly processed materials.

3

Plaintiff also claims that because of the "100% NATURAL" label, she and others were willing to and did pay a premium price for the beverages.

Plaintiff argues that because HFCS is a "highly processed sugar substitute" manufactured using artificial enzymes and acids, HFCS is not natural and thus Defendants' beverages, which contain HFCS, cannot be labeled as "100% NATURAL."  Based on the above allegations, Plaintiff brings four claims for relief for herself and the proposed injured class: violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count I); unjust enrichment and common law restitution (Count II); breach of express warranty (Count III); and breach of implied warranty of merchantability (Count IV).

**B.   Procedural History**

Plaintiff originally filed suit on April 21, 2008, in the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1294-08.  On June 8, 2008, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1332 and 1453, the Class Action Fairness Act of 2005.  On July 7, 2008, Plaintiff filed a motion to remand the case to state court but withdrew the motion by a letter dated August 26, 2008.

On September 12, 2008, Defendants filed a motion to dismiss Plaintiff's complaint on the basis that Plaintiff's claims were

4

preempted by the FDA's regulatory scheme.  On June 9, 2009, Defendants' motion was dismissed without prejudice pending a decision by the Third Circuit Court of Appeals in <u>Holk v. Snapple Beverage Co.</u>, 575 F.3d 329 (2009).  In <u>Holk</u>, the Court of Appeals held that plaintiff's claims that the label on defendant Snapple's iced tea beverages representing them to be "All Natural" are deceptive because the beverages contain HFCS are not preempted by federal statute or FDA regulation.  <u>Id.</u> at 342. Plaintiff subsequently filed a First Amended Complaint on July 31, 2009, joining Beverage Marketing USA, Inc. as a defendant.

On January 28, 2010, Defendants filed the present motion to dismiss, and briefing concluded on March 19, 2010, when Plaintiff filed a sur-reply with the Court's consent.  On May 17, 2010, Plaintiff filed a motion for an order certifying the action as a class action, which remains pending.

### C.  Federal Regulatory Scheme for Labeling Food and the FDA's Consideration of HFCS as "Natural"

In 1938, Congress passed the Federal Food, Drug, and Cosmetic Act ("FDCA"), Pub. L. No. 75-717, 52 Stat. 1040 (1938), which in turn established the FDA within the Department of Health and Human Services, 21 U.S.C. § 393 (2009).  Under the FDCA, the FDA is authorized to regulate food safety and labeling.  <u>Fellner v. Tri-Union Seafoods, LLC</u>, 539 F.3d 237, 251 (3d Cir. 2008).  In

1990, Congress then passed the Nutrition Labeling and Education Act ("NLEA"), Pub. L. No. 101-535, 104 Stat. 2353 (1990)(codified at 21 U.S.C. § 343), which reformed and standardized the requirements for nutrition labeling and health claims on nearly all food products, Holk, 575 F.3d at 332.

For years there has been much debate over the term "natural" as it pertains to food and beverage labeling. In 1993, after soliciting comments from the general public on the issue, the FDA stated the following:

> After reviewing and considering the comments, the agency continues to believe that if the term "natural" is adequately defined, the ambiguity surrounding use of this term that results in misleading claims could be abated. However, as the comments reflect, there are many facets of this issue that the agency will have to carefully consider if it undertakes a rulemaking to define the term "natural." Because of resource limitations and other agency priorities, FDA is not undertaking rulemaking to establish a definition for "natural" at this time. The agency will maintain its current policy (as discussed in the general principles proposal (56 FR 60421 at 60466)) not to restrict the use of the term "natural" except for added color, synthetic substances, and flavors as provided in § 101.22. Additionally, the agency will maintain its policy (Ref. 32) regarding the use of "natural," as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food. Further, at this time the agency will continue to distinguish between natural and artificial flavors as outlined in § 101.22.

> 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993).

6

Although the agency has recognized that "the use of the term 'natural' on the food label is of considerable interest to consumers and industry" and that "it believed that if the term 'natural' is adequately defined, the ambiguity in the use of this term, which has resulted in misleading claims, could be abated", id., the agency nonetheless maintains a policy of qualifying individual ingredients as "natural" on a case-by-case basis, Letter from Geraldine A. June, Center for Food Safety and Applied Nutrition to Audrae Erickson, President, Corn Refiners Association, [Docket Item 93]. The FDA has implemented only one regulation concerning the use of the term "natural," distinguishing natural flavoring from artificial flavoring for the "labeling of spices, flavorings, colorings, and chemical preservatives."  21 C.F.R. § 101.22 (2010).  Although an informal letter from an FDA officer suggested that the agency has recognized that the particular process used to manufacture HFCS may affect its qualification as natural, the FDA has yet to make any formal classifications.  See Letter from Geraldine A. June, supra.

7

**III.  DISCUSSION**

**A.   Motion to Dismiss First Amended Complaint Pursuant to the Doctrine of Primary Jurisdiction**

The doctrine of primary jurisdiction is applicable when an action that is otherwise within the court's jurisdiction raises some issue of fact that falls within the expertise and experience of an administrative agency.  Reiter v. Cooper, 507 U.S. 258, 268 (1993).  It serves to maintain uniformity and consistency, uphold the integrity of a regulatory scheme, and establish a "workable relationship between the courts and administrative agencies."  MCI Telecomms. v. Teleconcepts, Inc., 71 F.3d 1086, 1105 (3d Cir. 1995).  Although no fixed formula exists for applying the doctrine, United States v. Western Pac. R.R., 352 U.S. 59, 64 (1956), courts will generally consider four factors in determining whether the doctrine applies:

(1)   whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;

(2)   whether the question at issue is particularly within the agency's discretion;

8

> (3)   whether there exists a substantial danger of
>        inconsistent rulings;
>
> (4)   whether a prior application to the agency has been
>        made.

Clark v. Actavis Group HF, 567 F. Supp. 2d 711, 714 (D.N.J. 2000) (quoting IPCO Safety Corp. v. WorldCom, Inc., 944 F. Supp. 352, 355 (D.N.J. 1996)).

If judicial abstention is the appropriate course, the doctrine requires that a court "refer" the particular issue to the proper agency before proceeding, allowing the parties reasonable opportunity to seek an administrative ruling. Reiter, 507 U.S. at 268 n. 3; Business Edge Group, Inc. v. Champion Mortgage Co., 519 F.3d 150, 154 (3d Cir. 2008). It is within the court's discretion to stay the case or dismiss without prejudice should the former unjustly disadvantage the parties. Reiter, 507 U.S. at 268. For example, in Weinberger v. Bentex Pharm., Inc., 412 U.S. 645 (1973), the Supreme Court affirmed a district court's decision to refer the issues of which drugs qualified as "new drugs" and which were "grandfathered" to the FDA. The Court found that these "threshold questions" involving "complex chemical and pharmacological considerations" were particularly suited for the FDA given the agency's unique expertise and experience

9

in the field, and "not a matter well left to a court without
chemical or medical background." Id. at 655; see also
Sandoz Pharm. v. Richardson-Vicks, Inc., 902 F.2d 222, 231-
232 (3d Cir. 1990) (finding that the issue of whether an
ingredient was correctly labeled as "inactive" under FDA
standards was not a matter that could be properly decided by
the court).

The present case meets all four factors. First,
categorizing HFCS as either natural or artificial for the
purpose of food and beverage labeling does not fall within
the conventional experiences of judges. Similar to the
issues presented in Weinberger, the process for
manufacturing HFCS is a technical matter involving complex
chemical considerations, and a federal judge normally would
be unfamiliar[1] with how a particular enzyme or fixing agent

---

[1] Federal judges are capable of making determinations grounded in
technical or scientific principles in many varied and complex
contexts, and this case would present no exception. Such
adjudication is aided by the parties' expert witnesses and
sometimes by court-appointed experts under Rule 706, Fed. R.
Evid. For example, in patent cases the judge may have the
benefit of a "tutorial" presented by counsel and the parties'
experts regarding the technical or scientific field occupied by
the particular invention, so as to prepare the judge to construe
the claims of the patent. See, e.g., L. Pat. R. 2.1(a)(4)
(D.N.J.). Such procedures prepare the judge to adjudicate
matters in an unfamiliar field, and the same could be done in a
case like this one. The issue for this aspect of primary
jurisdiction, therefore, is not whether a judge would be
incapable of applying specialized scientific or technical

affects a substance's qualification as "natural."  Such an understanding may lie at the heart of determining whether HCFS is "natural."  Although Plaintiff contends that she is not asking the Court to define the term "natural," the entire claim -- that Defendants improperly labeled their beverages as "100% NATURAL" despite containing HFCS -- rests on an initial determination of whether HFCS is a "natural" substance.  This question lies within the FDA's particular field of expertise regarding food chemistry and the labeling of food and beverage products.[2]

Second, the use of the term "natural" as it pertains to food and beverage labeling falls within the FDA's discretion.[3]  The FDA employs food technicians, chemists, nutritionists, and numerous other specialists in order to

_____

concepts to the question at hand, but whether the federal agency with expertise and some regulatory experience with this issue is more likely to address the task with competence and knowledge arising from its customary duties and experience.

[2] Although the FDA undeniably has expertise in the technical, scientific, and public policy aspects of food and beverage labeling, its authority to determine the question herein is not preemptive, whether through express preemption, implied field preemption, or implied conflict preemption, as determined in Holk, supra, 575 F.3d at 342.

[3] While the FDA will not hear cases regarding the truth or falsity of advertising claims, Sandoz, 902 F.2d at 230, the Court is not referring the entire case to the FDA, but rather only the issue of whether HFCS is a "natural" ingredient in Defendants' beverages.

address public health and safety issues relating to foods
and medicines.  About FDA, http://www.fda.gov/AboutFDA/
CentersOffices/CFSAN/default.htm.  Given both the FDA's
purpose and resources, the question of qualifying HFCS as
"natural" is appropriately left to the discretion of the
FDA, not the Court, in the first instance.

Third, and perhaps most critical, is the danger that
this Court's classification of HFCS as either natural or
artificial will be inconsistent with that of other courts or
with the FDA itself.  Defendants are currently the subject
of another pending putative class action suit[4] with the same
underlying claim -- that HFCS is artificial and Defendants
therefore should not have labeled their beverage products as
"100% NATURAL."  Additionally, there are at least three
other proposed class action suits filed in federal courts
challenging the use of the term "natural" on beverage
products containing HFCS.[5]  Should this Court independently
decide whether HFCS is a natural ingredient, it is possible
that other federal courts or the FDA will come to a

---

[4] Covington v. Hornell Brewing Co., et al., No. 08-21894 (S.D.
Fla. filed July 3, 2008).

[5] Von Koenig v. Snapple Beverage Corp., No. 09-00606 (E.D. Cal.
filed Mar. 4, 2009); Weiner v. Snapple Beverage Corp., No. 07-
08742 (S.D.N.Y. filed Oct. 10, 2007); Holk v. Snapple Beverage
Corp., No. 07-03018 (D.N.J. filed June 29, 2007), rev'd, 575 F.3d
329 (3d Cir. 2009).

different conclusion, resulting in inconsistent outcomes for essentially identical claims and affecting food and beverage purveyors with nationwide businesses.  The prospect that different labels would be permissible in different jurisdictions would impose a burden on this industry that may be alleviated if the FDA chooses to speak directly to the question.

Fourth, neither this particular Plaintiff nor the Court has made a prior application to the FDA on this issue.  The Court should not decide whether HFCS qualifies as "natural" before attempting to seek guidance from the FDA, the administrative agency with expertise on this matter.  The FDA has the capacity to address and resolve the present dispute through the administrative determination process. See 21 C.F.R. § 10.25.[6]

---

[6] The FDA regulations provide for an administrative review process.

> The Commissioner will institute a proceeding to determine whether to issue, amend, or revoke a regulation or order, or take or refrain from taking any other form of administrative action whenever any court, on its own initiative, holds in abeyance or refers any matter to the agency for an administrative determination and the Commissioner concludes that an administrative determination is feasible within agency priorities and resources.

21 C.F.R. § 10.25.

13

Therefore, the Court will stay the case for six months from entry of this Order.[7]  Should the FDA fail to address the question within the given time frame, the Court will consider extending the time period if the FDA indicates an intention to promptly resolve the issue.[8]

**B.   Motion to Dismiss for Failure to State a Claim**

       1.   <u>Standard of Review</u>

To survive a motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), a complaint must contain more than mere labels and conclusions.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556

---

[7] Plaintiff has voiced concern that because the FDA has not yet taken any concrete steps to resolve the issue at hand, referral to the FDA would essentially leave the case unresolved.  It is for this reason that the Court is setting a time frame to ensure Plaintiff's claim is resolved in a timely manner.  This six-month stay period can be enlarged for good cause shown.  Likewise, the stay will be terminated and the Court will decide the issue if the FDA declines the Court's referral for an administrative determination.

[8] Counsel are directed to confer regarding the procedure for judicial referral of the question to the FDA for administrative determination and submit an appropriate Order for Referral for this Court's approval within ten (10) days, consistent with this Opinion.  Further, the parties herein are directed to cooperate in expediting the presentation of this question to the FDA, including assembling all material information and briefing as required by the FDA.  Finally, this Court requests that the FDA act upon this referral with a decision, or a timetable for future decision, within the six-month period of this stay.

(2007).  The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949.  When determining whether dismissal is appropriate, the Court conducts a two-part analysis.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  First, the factual and legal elements of a claim are separated.  Id.  The Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Id. at 210-11. Second, the Court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 211.  In other words, the complaint must do more than allege plaintiff's entitlement to relief; rather it must "show" such an entitlement with its facts.  Id.  "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief."  Iqbal, 129 S. Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

2.   <u>Unjust Enrichment</u>

Defendants argue that Plaintiff's claim for unjust enrichment must be dismissed on the grounds that Plaintiff has a legal remedy under the NJCFA.  Defendants offer no argument that Plaintiff has failed to plead the requisite elements of an unjust enrichment claim.

It is true that restitution for unjust enrichment is an equitable remedy that is unavailable when a plaintiff has an adequate remedy at law.  <u>Goadby v. Philadelphia Elec. Co.</u>, 639 F.2d 117, 122 (3d Cir. 1981).  However, it is equally true that plaintiffs are permitted to plead alternative theories of recovery.  <u>E.g.</u>, <u>In re K-Dur Antitrust Litig.</u>, 338 F. Supp. 2d 517, 544 (D.N.J. 2004).  At this stage in the proceedings, it would be premature to dismiss Plaintiff's unjust enrichment claim, pled as an alternate theory of recovery, based on the mere presence of possible legal remedies.  <u>See</u> <u>id.</u>  Accordingly, Defendants' motion to dismiss Plaintiff's claim for unjust enrichment is denied.

3.   <u>Breach of Express and Implied Warranty</u>

Defendants argue that Plaintiff has failed to state a claim for breach of express warranty and implied warranty of merchantability and is precluded from seeking any remedy because she failed to provide notice of breach to Defendants

16

before filing suit.  The Court disagrees.  The notice requirement under N.J. Stat. Ann. § 12A:2-607(3)(a) provides:

> "Where a tender has been accepted the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."

The Official Comments further provide:

> "The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched...[t]he notification which preserves the buyer's rights under this Article need only be one that informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation."

N.J. Stat. Ann. 12A:2-607, Comment 4.

As recognized in Strzakowlski v. General Motors Corp., No. 04-4740, 2005 U.S. Dist. LEXIS 18111, at *10 (D.N.J. Aug. 16, 2005), this Court has predicted more than once that the New Jersey Supreme Court would not require a buyer to give notice of breach of warranty to a remote manufacturer who is not the immediate seller under Section 2-607 before commencing suit.[9]  In

---

[9] See also Cipollone v. Liggett Group, Inc. 683 F. Supp. 1487, 1498 (D.N.J. 1988) (denying Defendant's motion to dismiss where Plaintiff's only notice was the filing of a complaint), rev'd on other grounds, 893 F.2d 541 (3d Cir. 1990), rev'd in part on other grounds and aff'd in part on other grounds, 505 U.S. 504 (1992); Duall Bldg. Restoration, Inc. v. 1143 E. Jersey Ave. Ass'n, 652 A.2d 1225, 1230 (N.J. Super. Ct. App. Div. 1995) (explaining that "[a] party harmed by breach of implied warranty

<u>Strzakowlski</u>, defendant GMC argued that the plaintiff failed to provide GMC with sufficient notice before filing suit and therefore failed to state a claim for breach of warranty.  <u>Id.</u> at *9.  This Court denied GMC's motion to dismiss, finding that a buyer is not required to provide pre-suit notice to a manufacturer who is not the immediate seller in an express warranty case.  <u>Id.</u> at *15.  The <u>Strzakowlski</u> decision also interpreted Official Comment 4 as establishing the purpose of the notice requirement to "spearhead settlement through negotiation" but that "negotiation and simultaneous litigation are [not] mutually exclusive."  <u>Id.</u> at *14.

We agree with the reasoning in <u>Strzakowski</u> and find that notice of breach of either express or implied warranty is not required in an action against a remote manufacturer who is not the immediate seller of a product.  Plaintiff's failure to provide Defendants notice of breach before commencing suit therefore does not preclude her from seeking a remedy before this Court.  We further agree with the <u>Strzakowski</u> decision in that should the New Jersey Supreme Court require a buyer to notify a

_____

will frequently not have the information necessary to enable it to give a prompt warning of the breach to a remote manufacturer or distributor" and that "[i]nterpreting N.J.S.A. 12A:2-607(3)(a) to impose that requirement would materially reduce the availability of a remedy for the breach").

remote seller of breach of warranty, notice-by-lawsuit may

suffice so long as it is brought within a "reasonable" time -- a

question that must be answered by the jury.[10]   The Court will

therefore decline to dismiss Plaintiff's breach of warranty

claims based on lack of sufficient notice.

### 4.   Statute of Limitations

Defendants' final contention is that Plaintiff's action for

breach of express and implied warranty of merchantability, based

on her alleged purchases over the six-year period prior to the

date of filing the complaint, is in part barred by the four-year

statute of limitations.   Plaintiff offers no argument in

response.   In accordance with N.J. Stat. Ann. § 12A:2-725,

Plaintiff's claims for breach of warranty for purchases predating

April 21, 2004 must be dismissed under the applicable statute of

limitations.

---

[10] An additional consideration for a motion to dismiss for failure
to provide notice for breach of warranty, though not required, is
whether the defendant has been prejudiced by the alleged lack of
notice.   See Pritchard v. Liggett & Myers Tobacco Co., 295 F.2d
292, 298 (3d Cir. 1961); Boyes v. Greenwich Boat Works, 27 F.
Supp. 2d 543, 551-552 (D.N.J. 1998).   Here, Defendants argue that
the prejudice is "self-evident" from Plaintiff filing a class
action suit without first having notified Defendants of the
breach and thus denying them the opportunity to cure.   Such
prejudice, if any, is not sufficiently substantial to justify
granting Defendants' motion to dismiss on this ground.
Defendants were presumably still in a position to cure after
Plaintiff filed suit, thereby rendering this claim moot.

19

Under N.J. Stat. Ann. § 12A:2-725(1), an action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.  A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  N.J. Stat. Ann. § 12A:2-725(2).  In the context of warranties, a breach occurs when tender of delivery is made.  Id.  In the present case, Plaintiff filed suit on April 21, 2008, claiming breach of express and implied warranty of merchantability for the beverages allegedly purchased during the six-year period prior to filing suit.  However, Plaintiff's claim for breach of warranty must have been commenced within four years of when tender of delivery was made, which occurred here when Plaintiff purchased the beverages.  Therefore, Plaintiff's claims for breach of warranty based on purchases predating April 21, 2004 must be dismissed under the statute of limitations.

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motion to dismiss under the doctrine of primary jurisdiction, but will stay this action for a period of six months and refer to the FDA the question of whether HFCS qualifies as a "natural" ingredient in Defendants' beverages.  The Court likewise will deny Defendants' motion to dismiss Plaintiff's claims for unjust

enrichment and breach of express and implied warranty of merchantability, except that the Court will dismiss any claim for breach of express or implied warranty arising out of purchases made before April 21, 2004.  The accompanying Order will be entered.  Further, counsel shall confer and submit to the Court a suitable Order for Referral within ten (10) days hereof.


**June 15, 2010**                                **s/ Jerome B. Simandle**
Date                                             JEROME B. SIMANDLE
                                                 United States District Judge