IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                           :
LAUREN COYLE, on behalf of    :    HON. JEROME B. SIMANDLE
herself and all others        :
similarly situated,           :    Civil No. 08-2797 (JBS-JS)
                           :
          Plaintiff,          :
                           :
     v.                       :          OPINION
                           :
HORNELL BREWING CO., et al.,   :
                           :
          Defendants.         :
                           :
_____
```

APPEARANCES:

Daniel R. Lapinski, Esq.
Philip A. Tortoreti, Esq.
WILENTZ, GOLDMAN & SPITZER
90 Woodbridge Center Drive
Woodbridge, NJ 07095
     -and-
Michael D. Halbfish, Esq.
LAW OFFICE OF MICHAEL D. HALBFISH, ESQ.
255 Old New Brunswick Road, South Tower, Ste. 120-S
Piscataway, NJ 08854
     Attorneys for Plaintiff

Robert P. Donovan, Esq.
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102
     Attorney for Defendants

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

This matter comes before the Court on the motion for class
certification of Plaintiff Lauren Coyle.  [Docket Item 122].

Plaintiff alleges that she was misled by labels on bottles of Defendants' Arizona brand beverages touting "All Natural" ingredients and thereby induced into buying bottles of Arizona beverages that contained High Fructose Corn Syrup ("HFCS"), which she claims is not "natural". Plaintiff is currently before the Court seeking to certify, pursuant to Fed. R. Civ. P. 23(b)(2), a class of consumers who purchased similarly labeled Arizona beverages that contained HFCS, seeking only declaratory and injunctive relief. Plaintiff proposes to certify her New Jersey Consumer Fraud Act ("NJCFA") claim on behalf of:

> All persons who, within the state of New Jersey from April 21, 2002 to present, purchased for personal consumption and not for resale or assignment, an Arizona brand beverage marketed, advertised, and promoted as "All Natural," "100% Natural," or "100% All Natural" but that contained high fructose corn syrup.

Plaintiff's putative class would seek to enjoin Defendants from claiming that their products containing HFCS are "all natural."

For the reasons set forth in detail below, the Court denies Plaintiff's motion for class certification because Plaintiff cannot satisfy the adequacy requirement of Rule 23(a)(4).

## II.   BACKGROUND AND PROCEDURAL HISTORY

The factual and procedural record in this case is confused on at least one key question: whether Plaintiff's qualifying purchase occurred before or after she concluded that Arizona beverages containing HFCS were not natural as labeled.  As this question has bearing on the Court's assessment of Ms. Coyle's (and her attorneys') adequacy to represent a 23(b)(2) class, the Court will detail the facts in the record on this point before turning to the analysis of the Rule 23 factors below.

Plaintiff's original Complaint in this action, and her subsequent Amended Complaint [Docket Item 72] and Second Amended Complaint [Docket Item 135], allege that on March 30, 2008, Ms. Coyle purchased a bottle of Arizona "Rx Stress" iced tea. (Second Am. Compl. ¶ 42.)  All three Complaints also allege, generally, that Plaintiff had been purchasing other Arizona products on "numerous other occasions" for the previous six years.  (Id. ¶ 43.)  Plaintiff alleges that on each of these occasions, she purchased the product "because she thought, based upon Defendants' representations, that the beverages were all natural."  (Id. ¶ 46.)  The only purchase of Arizona products for which Ms. Coyle has supplied a date and place of purchase was the March 30, 2008 event.

During the course of discovery of this case, Plaintiff produced for Defendants a retainer agreement she signed in anticipation of this lawsuit. (Donovan Decl. Ex. C.)  In the agreement, Michael Halbfish, Esq., one of Ms. Coyle's current attorneys in this litigation, agreed to represent Ms. Coyle in an anticipated class action seeking damages and injunctive relief against the Defendants in this matter for their deceptive practices in marketing beverages containing HFCS as "all natural." (Id. ¶ 1.2.)  The agreement was signed on August 9, 2007, more than seven months before Plaintiff has alleged that she was misled by Defendants' "all natural" labeling in her purchase on March 30, 2008.  (Id. ¶ 10.1.)

Other discovery documents produced by Plaintiff and her attorneys repeated the specific allegations about her March 30, 2008 purchase.  Specifically, Plaintiff's responses to interrogatories on January 26, 2009 and October 19, 2009 repeated the allegation of the March 2008 purchase, and alleged specific details of her Arizona purchases only with respect to the March 30, 2008 purchase.  (Donovan Decl. Ex. D, response to question 4; Donovan Decl. Ex. E, response to question 10.)

On February 16, 2010, Plaintiff was deposed by Defendants' counsel.  (Donovan Decl. Ex. A.)  Plaintiff was there confronted with questions over whether she had been incorrect in her

4

allegation of the date of her purchase, or whether she had
purchased the product on March 30, 2008, but with an awareness
that she considered the "all natural" label to be false.

> Q: So at the time you signed these Interrogatories
> you believed this answer [that she purchased
> the product on March 30, 2008, for a premium
> price based on a belief that the product was
> "all natural" because of the label] to be true?
> A: Yes.
> Q: And now you're saying you suppose not, that
> that's not true. What's not true?
> A: Given the timeline that we have established
> here, that would make the date not, the time of
> the purchase would have been after the time
> that I had discovered the labeling.
> Q: So when did you purchase the Arizona [R]x
> Stress herbal iced tea?
> A: My best guess would be on that date.
> Q: March 30, 2008?
> A: Yep.
> Q: So is it true that you purchased it on March
> 30, 2008?
> A: I suppose it is.

(Coyle Dep. 64:1-17, Feb. 26, 2010, Donovan Decl. Ex. A.)

Nearly two months after her deposition, Plaintiff produced a
signed declaration to Defendants that contradicts her deposition
testimony, prior answers to interrogatories and the allegations
in both her original Complaint and subsequent Amended Complaints.
(Coyle Decl., Apr. 7, 2010, Donovan Decl. Ex. G.)  In this
declaration, Plaintiff states unequivocally that she has not
purchased any Arizona product since the summer of 2007, and that
her testimony and allegation in her Complaints filed in this

case were incorrect; she meant to claim the alleged purchase
occurred in March of 2007 rather than on March 30, 2008.  (<u>Id.</u> ¶¶
6, 10.)  She offers no explanation for why she had previously
alleged the March 30, 2008 date in her Complaints and in
certified answers to interrogatories.

The present motion to certify a class of similarly situated
purchasers of Arizona beverages to pursue injunctive relief
pursuant to the NJCFA was later filed on December 15, 2010.  The
Court held oral argument on this motion on April 6, 2011.


## III.  DISCUSSION

### A.  Standard

"District courts have discretion under Rule 23 to certify a
class."  <u>Beck v. Maximus, Inc.</u>, 457 F.3d 291, 297 (3d Cir. 2006).
To certify a class, the Court must find that the proposed class
meets the prerequisites to a class action; "plaintiffs must
establish that all four requisites of Rule 23(a) and at least one
part of Rule 23(b) are met."  <u>In re Chiang</u>, 385 F.3d 256, 264 (3d
Cir. 2004).  "The burden of proving each of the requisite
elements of Rule 23 rests with the party seeking certification."
<u>Jones v. Goord</u>, 190 F.R.D. 103, 111 (S.D.N.Y. 1999) (citing
<u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614 (1997)).
However, "it is not necessary for the plaintiffs to establish the

6

merits of their case at the class certification stage, and ... in determining whether a class will be certified, the substantive allegations of the complaint must be taken as true." <u>Chiang</u>, 385 F.3d at 262. "Depending on the circumstances, [however,] class certification questions are sometimes 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,' and 'courts may delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" <u>Beck</u>, 457 F.3d at 297 (quoting <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 167 (3d Cir. 2001)).

The Third Circuit recently reiterated the "rigorous analysis" that the district court evaluating a motion to certify a class must undertake. <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 309 (3d Cir. 2008). Specifically, the Third Circuit held that a district court must make findings "that each Rule 23 requirement is met." <u>Id.</u> at 310. Thus, Plaintiff has the burden of proof by a preponderance of the evidence that she has met each element of Rule 23.

**B. The Rule 23(a) Elements**

Rule 23(a), Fed. R. Civ. P., provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3)

7

> the claims or defenses of the representative
> parties are typical of the claims or defenses of
> the class; and (4) the representative parties will
> fairly and adequately protect the interests of the
> class.

Fed. R. Civ. P. 23(a).  Because a plaintiff seeking to certify a

class must meet the requirements of all four elements of Rule

23(a), the Court will begin its analysis of Plaintiff's motion

with the element it considers most problematic: Adequacy.

        1.  Adequacy

    Rule 23(a)(4) seeks to ensure "that the representatives and

their attorneys will competently, responsibly, and vigorously

prosecute the suit and that the relationship of the

representative parties' interests to those of the class are such

that there is not likely to be divergence in viewpoint or goals

in the conduct of the suit."  Bogosian v. Gulf Oil Corp., 561

F.2d 434, 449 (3d Cir. 1977).  Factors to be considered when

determining adequacy of the named plaintiff are: "(a) the

plaintiff's attorney must be qualified, experienced and generally

able to conduct the proposed litigation; and (b) the plaintiff

must not have interests antagonistic to those of the class."

Weiss v. York Hosp., 745 F.2d 786, 811 (3d Cir. 1984).

    On the question of whether the plaintiff has interests

antagonistic to those of the class, courts often evaluate attacks

on the named plaintiff's credibility.  See CE Design Ltd. v. King

8

Architectural Metals, Inc., -- F.3d --, 2011 WL 938900 at *3 (7th
Cir. Mar. 18, 2011) (explaining that the credibility of the named
plaintiff is potentially a unique defense that might render
plaintiff's interests adverse to the class; reversing class
certification because of questions of credibility); Savino v.
Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998) (affirming
denial of certification on credibility grounds); Karnuth v.
Rodale, Inc., Civ. No. 03-742, 2005 WL 747251 at * 3 (E.D. Pa.,
Mar. 30, 2005); Weikel v. Tower Semiconductor Ltd., 183 F.R.D.
377, 397 (D.N.J. 1998) ("problems of credibility, when
sufficiently serious, can prevent a named plaintiff from being
certified as a class representative").

Defendants argue that Plaintiff's inconsistent allegations
and testimony regarding the date of her qualifying purchase of an
Arizona product render her an inadequate class representative.
Defendants cite Friedman-Katz v. Lindt & Sprungli (USA), Inc.,
270 F.R.D. 150, 159 (S.D.N.Y. 2010) for the proposition that
significant or core misrepresentations by the named plaintiff
undermines the adequacy of that plaintiff to represent the class.
Defendants suggest that, by either misrepresenting the date of
her March 30, 2008 purchase in two separate complaints[1], two

---

[1] Plaintiff's Second Amended Complaint was filed after
Defendants filed opposition to the instant motion to certify.

responses to interrogatories, and a deposition, or by falsely changing her story after the fact in order to salvage her claim, Plaintiff has demonstrated a significant lack of credibility that undermines her adequacy to represent absent class members.

Plaintiff responds that mere "inconsistencies" in deposition testimony are not disqualifying.  See Kronfeld v. Trans World Airlines, Inc., 104 F.R.D. 50, 59 (S.D.N.Y. 1984).  Additionally, Plaintiff seeks to distinguish Friedman-Katz on the basis of the extent and severity of the misrepresentations.  Specifically, Plaintiff argues that disqualification of the named plaintiff on credibility grounds should be reserved for cases where the Court finds that Plaintiff has intentionally lied, rather than innocently erred.  See, e.g., Kaplan v. Pomerantz, 132 F.R.D. 504, 510 (N.D. Ill. 1990) (denying class certification to plaintiff found to have lied in deposition because "[a] plaintiff's honesty and integrity are important considerations in allowing him to represent a class.") (citing Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 549 (1949)).  Secondly, Plaintiff argued before the Court at oral argument that, to the extent that Defendants have raised a problem of Plaintiff's credibility, such a credibility question is one for the jury to decide; it would be improper for the Court to make a credibility determination on the factual dispute of when Plaintiff last

10

purchased an Arizona product at this stage in the litigation.
See Weikel v. Tower Semiconductor, 183 F.R.D. at 397 ("[a]t this
stage of the matter [class certification], however, attacks on
credibility are not often given much weight.").

The Court begins by holding that Plaintiff is incorrect that
questions of credibility at this stage should be ignored and
reserved for the factfinder.  It is true that the factual
question of whether Plaintiff made purchases of Defendants'
products after concluding that, because they contain HFCS,
Arizona products are not "natural" would, were the case to
proceed to trial, be a proper merits question for the factfinder,
as it would bear on the question of whether she had suffered an
ascertainable loss as required by the NJCFA.  However, this Court
has an independent obligation at the class certification stage to
made findings on whether the named Plaintiff satisfies each of
the Rule 23 elements.  In re Hydrogen Peroxide, 522 F.3d at 316
("[a]n overlap between a class certification requirement and the
merits of a claim is no reason to decline to resolve relevant
disputes when necessary to determine whether a class
certification requirement is met.").  Thus, the Court must make a
determination at this stage whether the credibility problems
raised by Plaintiff's contradictory testimony and subsequent
declaration render her an inadequate class representative.

11

Second, the Court holds that it need not, necessarily, find Plaintiff to have intentionally lied to hold that she does not meet the adequacy element of Rule 23(a)(4).  The issue is not simply whether Plaintiff in fact lied, but whether her inconsistent testimony makes her vulnerable to a unique defense not faced by other class members, thereby rendering her interests potentially antagonistic to the interests of the other class members.  Karnuth v. Rodale, 2005 WL 747251 at *3 ("To deny certification, a court need not conclude that credibility problems would ultimately defeat the class representative's claim; rather, the court may deny class treatment if that unique defense is even arguably present").

In the instant case, the Court finds that Plaintiff's factual inconsistencies raise sufficiently grave credibility problems as to prevent her from serving as an adequate class representative.  First, the Court finds that Plaintiff filed three separate Complaints alleging with specificity that she was misled by Defendants' labeling and purchased an Arizona beverage in March, 2008, when she had retained an attorney seven months previously.  Her first Complaint alleging the March 30, 2008 purchase was filed just three weeks thereafter, on April 21, 2008, when the information was presumably fresh in the minds of Plaintiff and her attorney who signed the Complaint, who was

Lynne Kizis, Esq.  Ms. Coyle repeated these claims in at least two answers to interrogatories, again assisted by counsel, and again repeated the claim in her sworn deposition, even after being confronted with the inconsistency of such a claim.  Her subsequent declaration, in which she attempts to "clarify" the timeline in her deposition, does not explain how she had repeatedly asserted the "incorrect" date in her Complaints and interrogatories.[2]  This level of inconsistency must, logically, demonstrate either (1) an intentional effort to disguise the fact that she did purchase the Arizona Rx Stress beverage in 2008 as alleged, but for the sole purpose of bringing this lawsuit, or (2) a significant carelessness about the specific highly material facts she has alleged in the case.  Under either scenario, the Court would be required to find that Plaintiff is not an adequate class representative.

---

[2] Defendants argue that the Court should disregard the April 2010 Declaration as a "sham affidavit." See Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 254 (3d Cir. 2007).  The Court concludes that it need not decide the issue here, as the standard for summary judgment, in which the "sham affidavit" doctrine principally applies under Rule 56, Fed. R. Civ. P., does not apply under Rule 23(a).  The Court merely finds that, in the circumstances presented in this case, the credibility of the proposed class representative as to the essential transaction of her claim is in such stark dispute, and raises issues unique to her, that she cannot adequately represent the class.

These credibility problems are significantly worse than those of Kronfeld or Weikel, where the inconsistencies were ancillary to the plaintiffs' claims or arose in less crucial documents than in the instant case.  See Kronfeld, 104 F.R.D. at 52 (determining that plaintiff's credibility problems were "not of such a nature as to unduly burden the class by diverting attention from the substance of the basic claim advanced on behalf of the class".)  By contrast, in the instant case, were the Plaintiff to be certified as class representative, she would be required to address Defendants' argument that she made her only documented purchase of Arizona Rx Stress iced tea in March of 2008 solely for the purpose of bringing the instant lawsuit and therefore suffered no ascertainable loss.  This argument would divert attention from the substance of the basic claim advanced on behalf of the class, namely, whether Defendants' products containing HFCS can be truthfully labeled "all natural," and whether such labeling induced the purchases by class members.

As Defendants point out, Plaintiff's April 7, 2010 declaration does not explain how such a serious and central mistake could have inadvertently been included in the Complaints and discovery materials in this case, but seems, instead, as an effort to paper over the problem.  See Johnson v. Geico Cas. Co., 673 F. Supp. 2d 255, 279 (D. Del. 2009) (holding that named

14

plaintiff's misrepresentations regarding previous litigation involvement, and failure, when confronted with misrepresentations, to "address any of these cases when directly asked" defeated plaintiff's motion to certify on the basis of adequacy).  To certify a class with Ms. Coyle as the sole representative, under these highly questionable circumstances, risks the distinct possibility that the class could fail in its claim because its representative will be unable to prove she made a qualifying purchase.  This would not be fair to class members who may individually have meritorious claims.

Finally, the Court finds, as an alternative basis to deny class certification, that Plaintiff's counsel's adequacy is brought into question though the existence of these material discrepancies.  Under the most charitable interpretation of these facts, Plaintiff's counsel submitted three separate Complaints to the Court alleging a date of purchase that at least one of them (Mr. Halbfish) personally knew to be incorrect, and returned at least two answers to interrogatories repeating the same purportedly incorrect purchase date.  This is evidence that Plaintiff's counsel are too careless about key facts to effectively represent the interests of a class of potentially tens of thousands of absent class members.  See Grasty v. Amalgamated Clothing & Textile Workers Union, AFL-CIO, CLC, 828

F.2d 123, 129 (3d Cir. 1987), <u>overruled in part on other grounds
by</u> <u>Reed v. United Transp. Union</u>, 488 U.S. 319, 329-33 (1989)
(noting that district court could, on remand, make findings of
inadequacy of class counsel based on counsel's failure to comply
with briefing schedule).  Thus, even were Plaintiff's credibility
not brought into question through these discrepancies, the
carelessness of Plaintiff's counsel demonstrated in this case is
an independent reason to deny class certification on the basis of
adequacy.[3]

>        2.   <u>Remaining Rule 23(a) and 23(b) Elements</u>

Because the Court has concluded that Plaintiff fails to meet
her burden of proving adequacy, it must deny Plaintiff's motion
to certify, and therefore need not address the Parties' arguments
regarding the remaining Rule 23 elements.  <u>See</u> <u>In re Hydrogen
Peroxide</u>, 552 F.3d at 307 (district court must find "that each
requirement of Rule 23 is met" in order to certify class).

---

[3] Defendants raise other arguments about Plaintiff's
adequacy, regarding her "abandonment" of class damages. Because
the Court has already concluded that Plaintiff has not satisfied
the adequacy element of Rule 23(a)(4), the Court need not address
these arguments.

**IV.   CONCLUSION**

For the reasons stated above, the Court finds that Plaintiff has proved neither that she nor her counsel will adequately represent the proposed class.  Consequently, the Court must deny Plaintiff's motion for class certification in this case because she fails to meet the requirements of Rule 23(a).  The accompanying Order will be entered.


**May 26, 2011**                                **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            United States District Judge

17