IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - -

COYLE/ROBINSON, et al,        :  CIVIL ACTION NO. 08-2797
        Plaintiff            :  CIVIL ACTION NO. 11-2183
                             :
        v.                   :  Camden, New Jersey
                             :  June 30, 2011
HORNELL BREWING CO., et al,  :  11:00 o'clock a.m.
        Defendants           :
. . . . . . . . . . . . . . . :

STATUS CONFERENCE
BEFORE THE HONORABLE JOEL SCHNEIDER
UNITES STATES MAGISTRATE JUDGE

- - -

APPEARANCES:

For the Plaintiffs:        DAVID R. LAPINSKI, ESQUIRE
                           PHILIP A. TORTORETI, ESQUIRE
                           Wilentz, Goldman & Spitzer
                           90 Woodbridge Center Drive
                           Suite 900
                           Woodbridge, NJ  07095

                           BRUCE GREENBERG, ESQUIRE
                           JOSEPH DePALMA, ESQUIRE
                           Lite DePalma Greenberg, LLC
                           Two Gateway Center
                           12th Floor
                           Newark, NJ  07102

For the Defendants:        ROBERT DONOVAN, ESQUIRE
                           LEWIS GOLDFARB, ESQUIRE
                           McElroy Deutsch Mulvaney
                           & Carpenter, LLP
                           Three Gateway Center
                           100 Mulberry Street
                           Newark, NJ  07102

Audio Operator/ESR:        Sarah Kilborn

Transcribed by:            Paula L. Curran, CET

        (Proceeding recorded by Liberty Court Player digital
sound recording; transcript produced by AAERT certified
transcriber.)

2

(The following occurred in open court at 11:00 o'clock a.m.)

THE COURT:  Good morning, Counsel.

ALL:  Good morning, your Honor.

THE COURT:  Please be seated.  We're on the record. We are here on two cases.  Coyle versus Hornell, Docket 08-2797 and Robinson versus Hornell, Docket 11-2183.

Let's start the Coyle case and get the entries of appearances, starting with the plaintiff.

MR. LAPINSKI:  Good morning, your Honor, Daniel Lapinski, from the Wilentz firm, on behalf of Lauren Coyle.

MR. TORTORETI:  Good morning, your Honor, Philip Tortoreti, the Wilentz firm, on behalf of Lauren Coyle.

THE COURT:  Is there anyone else here for the plaintiff?

MR. TORTORETI:  No.

MR. DONOVAN:  Good morning, Bob Donovan of the McElroy firm, for the defendants.  Mr. Goldfarb is here, admitted pro hac vice, for the defense, as well.

THE COURT:  Okay.  Let's have those in the Robinson case for the plaintiffs.

MR. LAPINSKI:  Your Honor, good morning, Mr. Lapinski for Mr. Robinson.

MR. TORTORETI:  Good morning, your Honor, Philip Tortoreti, the Wilentz office, for Mr. Robinson.

3

MR. GREENBERG:  Good morning, your Honor, Bruce Greenberg, Lite, DePalma, Greenberg, for the plaintiff.

MR. DePALMA:  Good morning, your Honor, Joseph DePalma, Lite Greenberg for the plaintiff and your Honor, with us today is our summer intern, Ellie Lopez, who is sitting in the first row.

THE COURT:  Welcome, Ms. Lopez.

MS. LOPEZ:  Thank you, your Honor.

THE COURT:  What school do you go to?

MS. LOPEZ:  Rutgers.

THE COURT:  Oh, really.  Oh, Rutgers Newark.  Well, we have our three interns in the jury box to observe, as well.  So if you want to sit in the jury box, you're welcome to join them.  And for the defendants in Robinson?

MR. DONOVAN:  Bob Donovan, the McElroy firm, for the defendants.  Mr. Goldfarb is going -- we're going to submit a pro hac application.

THE COURT:  That is fine.  No problem at all.  Okay, well, as Yogi Berra said, I feel like it's deja vu all over again.  But here we are.  The purpose of this conference is to find out how plaintiffs intent to proceed in Coyle and to get a discovery plan for moving forward in Robinson.  The Court is obviously familiar with the case and of course, read Judge Simandle's opinion denying certification in the Coyle case.  And I'm aware of the motion for reconsideration filed

4

by the plaintiffs in the Coyle case.  Whoever wants to speak for the plaintiffs, as to Coyle, what are plaintiffs' intentions on moving forward on the Coyle case?

MR. LAPINSKI:  Thank you, your Honor, Dan Lapinski on behalf of Ms. Coyle.  As your Honor indicated, we filed a motion for reconsideration.  We had a conference call with opposing counsel yesterday and a consent order in Coyle has been submitted in order to extend the time by which defendants have to file their opposition to that motion for reconsideration.  So I believe that right now we're looking at a motion return date of August 1st, assuming that Judge Simandle signs and enters that consent order.

It's plaintiffs' position that following a decision on the motion for reconsideration, one of two things will end up happening.  If the motion for reconsideration is granted and we have the ability to be able to consolidate the Robinson case and the Coyle case.

THE COURT:  Well, ability to consolidate?  You withdrew your request to consolidate, didn't you?

MR. LAPINSKI:  We did request to consolidate.

THE COURT:  Okay, so why are you raising consolidation now?

MR. LAPINSKI:  Well, the reason that -- if the motion for reconsideration is granted, your Honor and then we have the Coyle case that has a pending decision on class

certification and the Robinson case that has a pending decision on class certification, as well, there is potentially the opportunity to have those two issues consolidated into one and one decision made.

THE COURT:  On the Coyle motion for reconsideration, are you asking Judge Simandle not only to reconsider his decision about the adequacy of counsel, but also the decision as to the adequacy of Coyle as a plaintiff?

MR. LAPINSKI:  Yes, your Honor.

THE COURT:  All right.  And is that because Judge Simandle overlooked some evidence or made some mistake or didn't appreciate the applicable law in the case?

MR. LAPINSKI:  We feel -- I believe, in the briefing papers, your Honor, we indicated that it was contrary to controlling law.

THE COURT:  Okay.  So what is your suggestion to how we proceed in Coyle?

MR. LAPINSKI:  Well, in Coyle, your Honor, during the pendency of the motion for reconsideration, we can move forward with the merits discovery in the Coyle case in order to start moving towards the finish line, regardless of whether the class is ultimately certified in Coyle.  When the Coyle case started, a scheduling order was put in place by your Honor, whereby discovery wasn't technically bifurcated, but discovery was essentially phased, so that the focus was

6

on class certification discovery.  Now that the class certification has been -- the class certification discovery has been finished, the issue of class certification has been fully briefed, we can move forward to the merits discovery and start to move that case forward.

THE COURT:  How much more additional merits discovery does plaintiff want in the Coyle case?

MR. LAPINSKI:  Well, in the Coyle case, I think that there is a significant amount of merits discovery that will have to be done, your Honor.  There's the issue of high fructose corn syrup, in particular, which is at the forefront of the case and determinations as to whether or not the composition of high fructose corn syrup can be considered natural and whether or not their representation of high fructose corn syrup as a natural product would be considered deceptive under the Consumer Fraud Act.

THE COURT:  What discovery do you want on the merits issues in Coyle, that plaintiff has not previously taken?

MR. LAPINSKI:  There's third-party discovery that would have to be done, your Honor, of the various corn refiners.  There is expert discovery that would have to be done, experts opining, I would assume, defendants in opposition to class certification had submitted a report in regard to high fructose corn syrup.  Because that's an issue that's common to the class, plaintiffs did not submit

7

anything in support of their position as to the composition of high fructose corn syrup, but there would be expert discovery that would be done on that, as well.  There would be discovery that would have to be done in regard to pricing associated with Arizona Iced Tea Beverages, comparable to other beverages on the market, in order to be able to establish the price premium that's alleged by plaintiff. There would be additional discovery directed towards defendants, that would go beyond the discovery that was done for purposes of class certification.  And off the top of my head, I can't think of anything else, your Honor.

THE COURT:  What's Ms. Coyle -- Ms. Coyle, right?

MR. LAPINSKI:  Yes.

THE COURT:  What's Ms. Coyle's damage claim?

MR. LAPINSKI:  Ms. Coyle's damage claim is that she paid a premium price for her Arizona Iced Tea beverages, due to the fact that it was represented to be an all-natural beverage.

THE COURT:  So what's her damages?  How much?

MR. LAPINSKI:  Her damages range from -- anywhere from 25 cents up to about 65 to 70 cents per purchase.

THE COURT:  How many purchases did she make?

MR. LAPINSKI:  Alleged in the Complaint, there was one purchase that she alleged with specificity.  She also alleged in the Complaint and testified to the fact that over

8

the course of the six-year period of time, there were numerous purchases that she had made.

THE COURT:  At best, how many purchases did she make?

MR. LAPINSKI:  We're looking at 20 to 30 purchases, your Honor.

THE COURT:  So what's her claim, ten dollars?

MR. LAPINSKI:  Roughly, your Honor, yes.

THE COURT:  So when the Court has to consider what merits discovery to permit Ms. Coyle to take in her case, how do you suggest we square that with Federal Rule 26(b)2 -- is it (b)2 -- well, no, (b)3 on a motion or on its own, the Court must limit the frequency or extent of discovery otherwise allowed if it determines that the burden or expense of the proposed discovery outweighs its likely benefit, the discovery is unreasonably cumulative, et cetera, et cetera, et cetera, et cetera.  So if you take one or two depositions in this case it will exceed the value of plaintiff's claims by multiples.

MR. LAPINSKI:  Yes, your Honor and I think that falls back to the pending motion for reconsideration and the overall impact of the pending -- a decision the pending for reconsideration has on the case.

THE COURT:  But you're not proposing, you're proposing to go ahead with merits discovery?

9

MR. LAPINSKI:  What I am proposing, your Honor, is that there's the pending motion for reconsideration.  What's left to be done in the Coyle case is merits discovery, to the extent that the Court finds it in the best interest of judicial economy to stay the case pending a motion for reconsideration, you know, there's going to be no objection on plaintiff's part.

THE COURT:  Well, we know from past history in this case, how many times that defendant stood up and said they wanted to stay the case and how many times the plaintiff opposed that and how many times the Court denied the stay.  And the Court's going to do the same exact thing now.  I am not staying the case.

MR. LAPINSKI:  Okay.

THE COURT:  On the other hand, if Ms. Coyle's claim is worth ten dollars, at best, the Court would be usurping it's responsibilities if it didn't appropriately limit the scope of merit discovery in relation to the ten dollar claim.  So before we decide what we're going to do in this case in Coyle, let's hear from the defendant.

MR. DONOVAN:  Thank you, your Honor, from our perspective, there is no need for merits discovery, at this point, because this matter is ripe for summary judgment and we intend to file a motion for summary judgment.  And the reason why it's ripe is based upon the plaintiff's own

inability to establish ascertainable loss or any qualifying purchase.  This was addressed during oral argument on the motion for class certification on April 6th.  So from our perspective, what we would like, an opportunity to do, your Honor, is file that motion for summary judgment.

THE COURT:  You can file that anytime you want, Mr. Donovan.  It's not going to stay the case, but you could file it tomorrow, if you want.  You don't need leave of Court, in this courthouse, to file a motion for summary judgment.

MR. DONOVAN:  But with respect to the issue of merits discovery, Judge, I think bears upon that because similar to the matter that was in your Southern District, the Weiner v. Snapple case, what happened there was, my recollection is that after the denial of class certification, the Court had allowed the defendant to move for summary judgment and at that point, awaited the decision of summary judgment.  Not stay the case, but awaited the decision summary judgment before engaging in any costly and unnecessary merits discovery.  There is no need for any merits discovery in the Coyle case.  The plaintiff has no demonstrable or ascertainable loss and similar to the Weiner v. Snapple case, has not produced any evidence of any qualifying purchase.

So that's why I mentioned the motion for summary judgment, Judge, is it's perhaps best to confront the issues

11

that way, because our experience has been most of the discovery, the vast majority of the discovery and the costly discovery in this case, your Honor, has been from this side of the table.  So if this case is ripe for summary judgment now, perhaps it's best to allow the summary judgment motion be filed and let that be decided to avoid the unnecessary burdens in a case that, apparently, is only worth, you know, less than a hundred dollars.

THE COURT:  Ten dollars.  Mr. Lapinski, do you --

MR. DONOVAN:  Excuse me, your Honor, can I just make one comment?  Plaintiffs have already had merits discovery.  There was no bifurcation of discovery.  They sought and obtained reams of documentation with regard to Hornell's pricing of its products.  At one point on the record, they said they were going to bring in a pricing expert.  That was before the Weinberg decision, where their expert was disqualified.  We submitted an affidavit from an expert on HFCS and whether it was natural.  We assumed they were.  So all these merits issues were already before the Court and already fully discovered.

THE COURT:  There is no question that the plaintiffs have conducted some merit discovery.  That can't be disputed.  But I think it's also, in fairness to the plaintiffs, it can't be disputed that they were not ordered to complete their merits discovery before they filed their motion for

12

class certification and I can't recall specifically when and how I said it in this case. But I say it in every class action case, that we're going to permit plaintiffs to conduct enough merits discovery so that they can file the motion for class certification. But we're not going to require plaintiffs to exhaust their merits discovery before they file that motion, because that would be, in the Court's view, inconsistent with the dictated Rule 23 that these motions for class cert get teed up right away.

So yes, you're right that merits discovery has been conducted. It's not fair to plaintiffs to say that they've exhausted it, but on the other hand, now that we're dealing with a ten dollar claim, we have to decide the appropriate way to proceed. The Court has to weigh that.

My question to Mr. Lapinski is, is there any discovery that plaintiff needs as to defense that there was no ascertainable loss? I don't want defendant to file a motion for summary judgment and your response to be a 56(f) affidavit.

MR. LAPINSKI: Your Honor, that's exactly what our response would be, in addition to other things.

THE COURT: Why?

MR. LAPINSKI: I think that --

THE COURT: What discovery do you need from defendant for you to prove your loss?

13

MR. LAPINSKI:  -- it doesn't necessarily have to be from defendant, your Honor.  But it can be from third parties, it can be from the locations where plaintiff made purchases of her Arizona brand beverages to be able to show what the cost of the Arizona brand beverage was that she purchased at that location, as compared to competitive products that she would have purchased, but for the representation that the product was natural.  That type of discovery would help to support her claim for ascertainable loss.

A couple points in regard to that.  The first is that at the class certification stage, plaintiff is not required to prove her losses.  She is required to prove that the losses are provable on a class-wide basis.  We have the right and the ability to go back now, during merits discovery, to be able to gather the information that establishes the ascertainable loss.

A second point that I'll bring up, Mr. Donovan mentioned the Weiner case.  The big difference between the Weiner case and the grant of summary judgment by the court in the Weiner case and where we are here, is that in the Weiner case, both class discovery and merits discovery had been completed prior to the motion for class certification.  So all discovery had been completed in the Weiner case.  It wasn't a situation where the court allowed summary judgment

14

motions to be filed and made a decision on the motions for summary judgment and then was going to allow merits discovery to go forward.  All discovery had been completed in the Weiner case and we're just not positioned the same way here.

THE COURT:  What discovery do you need, Mr. Lapinski, to determine your client's assertion of the loss?  Specifically, not third party discovery, what specifically do you need?

MR. LAPINSKI:  Specifically, your Honor, the discovery that we would need would be discovery from the locations where she has stated that she purchased Arizona brand beverages in the past.  Discovery from those third party organizations, in order to be able to determine the prices that they were paying at the times that plaintiff alleged that she purchased the product.  The prices that were being charged for comparable, competitive products, that weren't alleged to be all natural, that she would have purchased but for the representations on the Arizona beverages.

THE COURT:  What's Ms. Coyle going to testify she would have purchased?

MR. LAPINSKI:  She indicated and I don't have the discovery in front of me, your Honor.  There are Lipton brand products, Nestea brand products, are the two that jump out, jump out of my head right now, that were products that were

15

available to her, that she would have purchased but for the representations of natural.

THE COURT:  So if she paid a $1.29 for this particular product, if it was in your view appropriately advertised, she may have paid $1.19 for another product?

MR. LAPINSKI:  I think, specific recollections that I have, your Honor, is that the Arizona brand beverage was a beverage that had a cost of $1.65, whereas the other products were anywhere from 99 cents to $1.25.

THE COURT:  Mr. Lapinski, would you stipulate to that?

MR. LAPINSKI:  I won't --

THE COURT:  I'm sorry, I apologize.  Mr. Donovan, would you stipulate to that?

MR. DONOVAN:  I'm sorry, stipulate to what, your Honor?  I'm sorry.

THE COURT:  That the alternative products would cost less than your client's product?

MR. DONOVAN:  Absolutely not, your Honor.  There was in evidence, on the class certification motion, an affidavit from Mr. Vultaggio showing the line pricing methodology by Arizona Iced Tea, which means they sell the same price, whether the product has HFCS and labeled natural or whether its diet and it does not.  There is no premium pricing in connection with this.

16

But, your Honor, I think that the focus of the motion for summary judgment, in connection with the ascertainable loss, there is also another element that really almost doesn't have anything to do with ascertainable loss, although, it's somewhat.  And that is, this -- and this is why it's similar to the Weiner case -- this plaintiff can't testify with any reasonable degree of certainty what she purchased, what the cost was.  The only purchase that she identified was the purchase that she made seven months after she retained her lawyer, which obviously, is not a qualifying purchase.

So the record before the Court, which how a third-party discovery could change this is that -- I don't understand how it could -- is that this plaintiff can't testify as to any qualifying purchase that could even approach an actionable claim.  And the plaintiff was moving for an injunction, an injunction only on behalf of the class, on the class certification. The standard there, is you have to be able to provide an ascertainable loss that can survive a motion for summary judgment.  One of our arguments was that the plaintiff could not do that based on the record.

So that is in the issue of whether the matter was ripe for summary judgment was discussed at the oral argument on April 6th, your Honor.  So I don't see how any third-party discovery could pertain to a 56(f) affidavit.  Either the

plaintiff can testify and did suffer an ascertainable loss or the plaintiff cannot and the plaintiff can't. The plaintiff admitted making a purchase that was and the only purchase that the plaintiff could identify, that was not a result of any deception. It was a willing purchase at a willing price and whether or not what some third-party retailer charges to another consumer, is irrelevant for purposes, is not material, a material fact for purposes of this plaintiff's claim.

THE COURT: How soon can you file your motion for summary judgment?

MR. DONOVAN: Two weeks, your Honor.

THE COURT: Mr. Lapinski, didn't Judge Simandle address this issue about qualifying purchases, in his opinion?

MR. LAPINSKI: He did, your Honor and in his opinion, he indicated that it was an issue that went to the credibility of the plaintiffs. He didn't make a determination as to whether or not there was a qualifying purchase or was not a qualifying purchase. He indicated that the issues that were before the Court raised issues as to the credibility of plaintiff, but nothing more.

THE COURT: How many different vendors does your client, Ms. Coyle, claim she bought this product from?

MR. LAPINSKI: She specifically identified two

18

different vendors, your Honor.

THE COURT:  Do you know who they are?

MR. LAPINSKI:  I do, one of them was a WaWa located in Galloway Township, New Jersey.  The second one was a convenience store located at the college that she was attending.

THE COURT:  Which was?

MR. LAPINSKI:  The college was Stockton and I believe that the convenience store may have been called, I believe it was the Osaka convenience store.  It was disclosed in discovery, but I don't have it in front of me right now.

THE COURT:  Do you know when these purchases were made, Mr. Lapinski?

MR. LAPINSKI:  Yes, yes, your Honor, we do.

THE COURT:  Approximately?

MR. LAPINSKI:  Approximately, leading up to -- the specific purchase at the WaWa store was made in March of 2007.  The purchases at the convenience store, at the school, were made in and around the same time.

THE COURT:  So the discovery that you want to conduct will be directed towards finding out, for example, what WaWa charged for Arizona in March, '07 and what they charged for say, Lipton in '07?

MR. LAPINSKI:  Yes, your Honor.

THE COURT:  Doesn't your client know what she paid

19

for the product?

MR. LAPINSKI:  She does, your Honor and she testified to that.

THE COURT:  Are these the only two vendors that you would take discovery on to determine if there was an ascertainable loss?

MR. LAPINSKI:  I believe so, your Honor, yes, to the extent that it was going to be more than those two, it's not like it would be ten to 20 additional vendors.  It may be one additional vendor, two additional vendors.

THE COURT:  If the Court permitted the plaintiff to take this discovery on this ascertainable loss issue and then the defendant filed a motion for summary judgment, would plaintiff then come back and argue that it needed additional discovery on the issue that defendant raised or submit a 56 affidavit, 56(f) affidavit?

MR. LAPINSKI:  Your Honor, not knowing specifically what defendant's summary judgment argument, what specific issues are going to raised, I don't know that I can give a definitive answer to that.  But I think if the third-party discovery were allowed to move forward and we were able to get that information and defendants were to file a summary judgment motion as to the ability to establish ascertainable loss, then I don't think that there would be any Rule 56 arguments that we would come back with.  Again, I can't

20

commit definitively, because I don't know what's going to be in defendant's moving papers.

THE COURT:  Mr. Donovan, the motion for summary judgment that you contemplate filing, would it be on any issues other than this ascertainable loss defense?

MR. DONOVAN:  Judge, if ascertainable loss means, what I've described as the inability to testify to any qualifying purchase, no records and such, you know, generally the reasons I've stated on the record.  No, Judge and that would be the focus, the sole focus of the motion would be -- it would be very similar to the motion that was filed in the Weiner v Snapple case, which was inability to prove with any ascertainability, any loss whatsoever, for the reasons I've mentioned.

THE COURT:  If that motion is, let's say, denied, do defendants have any other defenses in their pocket that they're going to come back and say we want to file another motion for summary judgment?

MR. DONOVAN:  I'd have to think about that, Judge, because there, you know, I have to think a little longer and hard on that one, okay, if I may.

THE COURT:  Okay, thank you, Mr. Donovan.  We'll circle back on the Coyle case and decide what to do.  Any other issues on Coyle before we turn to Robinson?

MR. LAPINSKI:  Not from plaintiff's perspective,

21

your Honor.

THE COURT:  Okay.

MR. DONOVAN:  No, your Honor.

THE COURT:  Let's turn to Robinson.  I don't know who is going to speak for the plaintiff on Robinson.  Mr. Lapinski, it looks like they're pointing towards you.  Does plaintiff in Robinson, I think I know the answer to this question.  I hope I get the answer I'm thinking of.  Need any additional discovery to file their motion for class certification in Robinson?

MR. LAPINSKI:  You may not get the answer that you were hoping for, your Honor.  But I don't necessarily know that you're going to get the answer you were dreading.  Right now, the answer has to be, I can't answer that.  And the reason that I can't is that --

THE COURT:  That wasn't one of the choices I was thinking --

MR. LAPINSKI:  Right.

THE COURT:  -- I thought I'd get a yes or a no.

MR. LAPINSKI:  The only reason that I can't answer that definitively right now, your Honor, is that the firm of Lite DePalma has recently made an appearance in the case. There has been no discovery, at this point in the Robinson case.  There has not yet been an agreement between the parties that the discovery that was taken in the Coyle matter

22

will be used in the Robinson matter and because there is currently a protective order in place in the Coyle matter, my co-counsel has not yet had the opportunity to take a look at any discovery in the Coyle matter, to know whether or not moving forward in Robinson, we would need anything.

THE COURT: That's not good enough, that's not good enough. You can't come to a Rule 16 conference and tell me you don't know what you need for class certification. That does not work. That's why we're here, to decide what discovery we need. Let's assume, for the sake of argument, there's either an agreement or a court order that says all discovery in the Coyle case can be used in the Robinson case. Is the plaintiff in Robinson going to argue that even though they filed their motion in Coyle, they need additional discovery for class certification purposes in Robinson?

MR. LAPINSKI: Your Honor, if it's stipulated that the discovery that was conducted in Coyle can be used in the Robinson case, then I think we'd be in a position to file. Plaintiffs would not have to take any discovery directed at defendants and third parties.

THE COURT: Thank you, Mr. Lapinski.

MR. LAPINSKI: I think that's the answer you were originally looking for, your Honor.

THE COURT: I wasn't -- I wouldn't say I was looking for it, I was expecting to get that answer. Mr. Donovan, you

23

don't have any objection to stipulating that the discovery from Coyle can be used in Robinson for class certification purposes, do you?

MR. DONOVAN: No, but with a caveat, your Honor. The caveat is and this is a discussion we had in connection this morning. That in the event we prevail in Coyle and that matter is dismissed, from our perspective the, in assuming arguendo that Robinson, the plaintiffs would prevail, we are in a position where we don't want to have a case which was not successful on the plaintiff's side be used as a basis to get some type of relief in connection with a class certification, attorney's fees in particular, your Honor. That's the caveat.

THE COURT: What I'm contemplating is a stipulation/court order that says, for purposes of class certification only, the discovery from the Coyle case can be used in the Robinson case. Whether it could be used at trial, whether it could be used for attorney's fees, claims, et cetera, that's left for another day. It's not appropriate or necessary to decide that issue now. The only question before the Court is, whether or not the Coyle discovery can be used for class certification purposes only in Robinson. Is there an objection to that?

MR. DONOVAN: No, your Honor. As long as I understand it, that's the only discovery that they'll be

24

entitled to.

THE COURT:  Okay, now, you obviously, would need your own discovery.  Is there any reason why Mr. Robinson can't answer the same interrogatories and document requests that Ms. Coyle answered?

MR. DONOVAN:  Judge, I think that we have to propound, perhaps, some of the same.  But I anticipate different ones, your Honor.

THE COURT:  Why?

MR. DONOVAN:  Because just from a strategic point, your Honor, there may be a different way of phrasing a discovery question, a different area and when we -- when the Complaint in Coyle was filed and I think it's repeated in the amendments, as well, that case reiterated in an initial motion for class certification, that case was a B-3 case.  It was never really focused on -- they sought an injunction, but it was never, never pled as only an action seeking an injunction on behalf of the class.

THE COURT:  Coyle was a B-3 class.

MR. DONOVAN:  Well, it was pled as both, but it was -- it walked like a B-3, it looked a B-3 and in the initial motion for class certification, sought a B-3 and a B-2, but the focus of the initial motion was a B-3.  And eventually, that was withdrawn when the matter was stayed and was referred to the FDA.  There certainly was no claim in the

25

Coyle case of cohesion, that the plaintiff was silent on cohesion.  So the Complaint, although virtually identical, there are differences, your Honor, there are.  And so I anticipate, you know, a different thrust in certain areas of discovery.

THE COURT:  Is Robinson a B-2 and a B-3?

MR. DONOVAN:  That's a question for the plaintiff, your Honor.

MR. LAPINSKI:  No, your Honor.

THE COURT:  Is it just a B-3?

MR. LAPINSKI:  No, your Honor, it's a B-2 class, it seeks damages on behalf of the individual plaintiff and a B-2 class seeking injunctives.

THE COURT:  So it's only a B-2, not a B-3?

MR. LAPINSKI:  Correct, your Honor.

THE COURT:  Okay.

MR. DONOVAN:  I'm sorry, your Honor, from the document side of the request equation, probably mirrored, but I think the interrogatories request for admissions will be different.

THE COURT:  So you'll get your answers to your interrogatories and document requests.  You'll take plaintiff's deposition.  Barring anything unforeseen, do you anticipate any other discovery you'll need for class cert?  I mean, there might be a third-party subpoena or two.

26

MR. DONOVAN:  I think that there's potential of third-party --

THE COURT:  Did you take any other discovery as to Ms. Coyle, other than her dep and written discovery?

MR. DONOVAN:  Yeah, there was a third-party subpoena, your Honor, on a blogging website.  So I would anticipate there would be some third-party discovery and obviously, you know, that's anticipatory.  You know, obviously, I don't know what the answers to interrogatories are going to show, but I think that's probably a fair assessment.

THE COURT:  Okay.

MR. DePALMA:  Your Honor, Joseph DePalma, I'm sorry. My partner, Bruce Greenberg and I haven't had the chance to delve into discovery.  We've just, as you know, entered an appearance in Robinson last week.  But I can envision, perhaps, one --

THE COURT:  Was it last week, Mr. DePalma?

MR. DePALMA:  Time flies, maybe two.

THE COURT:  So --

MR. DePALMA:  It was recent.

THE COURT:  Oh, okay, it was recent.

MR. DePALMA:  It was, but I can envision, just thinking through in my own mind, without having the benefit of a lot of facts that I will soon have, that there could be

a possibility that we would want to offer an expert in class certification and certainly we would --

THE COURT:  No problem at all.

MR. DePALMA:  -- give the opportunity for that deposition to be taken.

THE COURT:  No problem at all.  That goes to the, you know, the motion stays.  There's no problem at all with that.  I want to get to your fact discovery though.  For the Rule 26 disclosures, I assume for the plaintiff, that's pretty straightforward.  Is there -- the Rule 26 disclosures, Mr. Donovan, from the Coyle case, can you refresh the Court's recollection, was it limited in any respect to just class cert issues?

MR. DONOVAN:  No, your Honor.

THE COURT:  Will you produce the same Rule 26 disclosure in Robinson that you did in Coyle?

MR. DONOVAN:  Subject to some modifications, because things that have happened over, you know, a matter of months, I presume so, yes, your Honor.

THE COURT:  Did I get a schedule from the parties in Robinson, a discovery schedule pursuant to the order?  Or did we send out that order that we usually do?

MR. DONOVAN:  No, your Honor --

MR. LAPINSKI:  Your Honor, I don't believe, well, I know that we did not submit any type of pre-trial discovery

28

order.

THE COURT: Yes, doesn't look like it was sent out.

MR. LAPINSKI: But I believe that the scheduling conference was more or less informally scheduled --

THE COURT: Right.

MR. LAPINSKI: -- following the conference call and that's the reason the parties failed to do so.

THE COURT: Right, you're right, Mr. Lapinski.

MR. DONOVAN: Your Honor, just to -- we obviously have a motion to dismiss, which is pending, which is returnable August 1.

THE COURT: That was on what grounds?

MR. DONOVAN: It was on the grounds of inadequacy of counsel.

THE COURT: Right, but now we have Lite DePalma in the case.

MR. DONOVAN: The Complaint, as pled, your Honor, seeks the appointment of plaintiff's counsel as class counsel. But there's also other elements. There's a motion to strike the class allegations because of the un-ascertainability of the class, as defined and there's the Statute of Limitations in a 9(b) motion.

THE COURT: You're not asking to stay the case, are you?

MR. DONOVAN: No, I'm not, your Honor, I just wanted

29

to alert the Court of that motion.  Because in a real sense, the Complaint could change, the allegations could change. Because, if the Court were to decide --

THE COURT:  Right.

MR. DONOVAN:  -- that they needed to comply with 9(b) --

THE COURT:  Right.

MR. DONOVAN:  -- they would get a leave to amend.

THE COURT:  Right.

MR. DONOVAN:  So that's -- I alert the Court to that.

THE COURT:  Okay.  Yes, Mr. Lapinski?

MR. LAPINSKI:  My only point on that, your Honor, is that Judge Simandle's previously ruled on a 9(b) motion to dismiss in the Coyle matter, on a Complaint that essentially mirrors this Complaint and denied defendant's motion.

MR. DePALMA:  Your Honor, I think, looking at that motion, it seems with our entry into the case and we asked them at a meet and confer, whether they would consider dropping the motion.  They won't because of various reasons that Mr. Donovan just expressed.  I can say, looking at it, that we would be willing to stipulate that the Statute of Limitations, pleading in the Robinson Complaint, should be shortened because it doesn't piggyback on Coyle.  Other than that issue that they raised, we just see everything else tied

30

to this adequacy issue, which we think should really go away and we should get to the class. But perhaps they need some time to mull that over and now or soon, but we think it, I've looked at the motion, I don't know where it's going other than Statute of Limitations and we're willing to concede that point.

THE COURT: So in the Robinson case, there was what, do you know what the -- did it set forth the earliest date that the claim was made for?

MR. DePALMA: I believe that the earliest date in the Complaint was six years before Coyle Complaint. it was goes back more than six years from when they filed Robinson.

THE COURT: So you just want to go six years back from when they filed the Complaint?

MR. DePALMA: Yes.

THE COURT: Well, you could probably do that by, I would assume, by well --

MR. DePALMA: We're representing that today, your Honor, so that --

THE COURT: Yes, I know, but it would have to be reflected in the pleadings, but I, you know, I want to do this the easiest, quickest, most simple, economical way rather than a motion. They file a motion and then --

MR. DePALMA: Exactly.

THE COURT: -- I just want to get to the crux of it.

31

So --

MR. DePALMA:  Your Honor, however you would like us to proceed.  We could either make technical amendments to the Complaint, if that's what the Court wants us to do or perhaps we could see whether the defendant's given that representation, would be willing to withdraw the application, because all that's really left is adequacy.

THE COURT:  Suppose we do this.  Is the only change to the current Robinson Complaint this date issue?

MR. DePALMA:  Well, that's all that we think we would need to make to it.  Mr. Donovan raises the fact that because our name isn't mentioned in the original Complaint, that somehow we're off to the side.  I don't really think that that matters, but certainly, if we're going to amend the Complaint, we would --

THE COURT:  So suppose I say -- suppose I grant plaintiffs leave to file their Amended Complaint two weeks from today.  You'll put your name on the Complaint, you'll change this date.  Isn't that satisfactory for your purposes?

MR. DePALMA:  If that would serve to have the defendants withdraw the motion, I think we would -- that makes perfect sense.

THE COURT:  So wouldn't you do it even if they don't withdraw the motion.

MR. DePALMA:  We think that if -- I don't want to

32

have another motion to dismiss filed.  If we just did that without having this discussion, amended the Complaint, there would be a new brief filed, perhaps, with a new schedule. That's what I want to try and avoid, wasteful procedure.

THE COURT:  Me, too.

MR. DePALMA:  And I think everybody does. Certainly, your Honor, if we amend the Complaint and as a result of those amendments, the motion goes away, that makes perfect sense.

THE COURT:  Well, let's say, Mr. Donovan takes the position that, no, we're not going to withdraw any portion, right now, of our motion to dismiss.  Wouldn't you still file your Amended Complaint?

MR. DePALMA:  I don't know if I would want to take my one "free shot" at an amendment on something as technical as what we're raising right now.  Because I don't think that either amendment is necessary, at this stage of the litigation.  There may be reasons --

THE COURT:  I disagree as to the date issue.

MR. DePALMA:  Excuse me, your Honor.

THE COURT:  I disagree as to the date issue.  That's a substantive issue.  That's a substantive issue, that's a real issue.  The main issue, if they want to stand on formalities, they have that right, but I think it's a waste of time, but they have that right.  I want to -- I have the

33

same goal as you do.  I want to just, I want to get to the merits and avoid as much unnecessary motion practice as possible.  If your response to their motion to dismiss is to file an Amended Complaint, Judge Simandle denies their motion to dismiss, they refile another motion to dismiss.  I mean, I'd just like to shorten that process.

MR. DePALMA:  So would I and I think my goal, your Honor, is to try and have Robinson come in as seamlessly as possible on top of Coyle.  So whatever we could do to achieve that goal, that's what we're trying to do here.  So I think that this motion that Mr. Donovan filed sort of stands in the way of that attempt at seamless transfer of Coyle interrogatories.

THE COURT:  Are there any other amendments you contemplate, right now, other than the date and the name?

MR. DePALMA:  Your Honor, I believe that the defendant's argument in regard to Rule 9(b) is that we don't specifically identify each Arizona flavor or brand beverage that defendants sold that would be part of the Complaint.  As I indicated previously, Judge Simandle, in a prior ruling, had found that there was not a need to do that and the Coyle matter was allowed to go forward.  If we were going to amend the Complaint, we could amend the Complaint and ask the Court to take judicial notice of the Arizona brand beverages, these specific flavors that are at issue here and I think that that

34

may cure all of the issues that are before the Court and the motion to dismiss. But again, it's not my motion, so I would defer to Mr. Donovan on that.

THE COURT: Right, right.

MR. DONOVAN: Your Honor, that's not -- the motion goes to the unspecified advertisement, websites and promotion. It doesn't focus on -- they did identify labels. The focus under 9(b) is they didn't identify these alleged, offensive, unlawful websites, promotions and advertisements. I do not recall, Mr. Lapinski may be correct, but I do not recall making a 9(b) motion in the Coyle case.

What I do recall is that in the other related cases, both cases that have been raised in other matters and one in particular, a Snapple case in California, the Court did grant a 9(b) motion for the failure to append or attach the allegedly offensive advertisement, website and promotion. That's the Vonconick (ph) case, your Honor. So there is a basis for that. So it's not just the labels. I think or my recall is, I was just not prepared to argue the motion, but my recall is that we acknowledge and even identify the labels. The 9(b) aspect of the motion deals with the non-labeling issues alleged in the Complaint.

THE COURT: Okay, the schedule the Court's going to put in place in Robinson. The plaintiffs are granted -- are given two weeks to file an Amended Complaint without leave of

Court.  Presumably, that's going to moot out the motion to dismiss and defendants are going to have to refile it if they want to, but I'm not going to order them to do that.  But we've seen enough case law on how judges handle that situation.

Two weeks after that, the parties file their Rule 26 disclosures and defendant is going to serve their interrogatories and document requests on plaintiffs.  Plaintiffs have 45 days to answer.  The parties are going to be given 90 days for fact discovery on class cert issues, since all we're dealing with is plaintiff's deposition and perhaps some miscellaneous third-party discovery and then we'll have a date for a class certification motion.  I want to look at what we did in the Coyle case with regard to the disclosure of experts and how we handled that and probably handle it the same exact way.

What I want to do is to avoid a situation where plaintiffs file a motion with an expert certification and then we have to hold up briefing for six months until defendant gets his expert and does all that and I don't want to do that.

With regard to the Coyle case, plaintiffs are going to be given 60 days to do their discovery on the ascertainable loss issue.  And then there'll be a deadline after that for the defendants to file their motion for

36

summary judgment on that issue only.  And then if that motion is denied, we'll be back here and see what additional discovery plaintiffs need on their ten dollar claim.  So that will take us forward on both cases.  There's no reason we can't get this Robinson motion for class cert filed this year, I would assume.  I haven't worked out the particular dates, but if all we're talking about in Robinson is a new plaintiff and adequacy issues as to the new plaintiff, we should be able to get that motion filed sooner rather than later.  Mr. Donovan?

MR. DONOVAN:  Your Honor, 90 days commences at what point?

THE COURT:  90 days for --

MR. DONOVAN:  Discovery, fact discovery on class cert.

THE COURT:  -- that will commence 90 days after --

MR. DePALMA:  I have it from the disclosures, your Honor, is that what you meant?

THE COURT:  It shouldn't be 90 days after you get the rog answers, because all you'll be doing is taking plaintiff's dep and some third-party discovery and you've been here before, Mr. Donovan.  If there's good cause to extend it because of an unusual issue, we'll deal with that issue.  So it's 90 days from the Rule 26 disclosure, so that will be two weeks and I'll work out these dates.

37

MR. DePALMA:  That's what I have, your Honor.  I have it in my notes from what you had indicated that within two weeks, 26 disclosures and propoundment of interrogatories and document requests.

THE COURT:  Right.

MR. DePALMA:  And from that date, plus 45 to answer.

THE COURT:  Right.

MR. DePALMA:  And then from that date, plus the 90--

THE COURT:  Right.

MR. DePALMA:  -- for fact discovery to close.

THE COURT:  Right.

MR. DePALMA:  Okay.

THE COURT:  In the Rule 26 disclosure, I had assumed that enough information, I don't know if you'd want the employment records or medical records or whatever, but those sorts of things should be disclosed, if they're relevant to the case.  I mean, it sounds like you're following the same script from the Coyle case.

MR. DONOVAN:  I'm sorry, your Honor, so it's two weeks they file a --

THE COURT:  Two weeks, the parties serve their Rule 26 disclosures.

MR. DONOVAN:  I thought two weeks they file --

MR. DePALMA:  Two weeks Amended Complaint.

THE COURT:  I apologize.

38

MR. DePALMA:  Plus two weeks, Rule 26 disclosures.

THE COURT:  Right.

MR. DePALMA:  Two weeks after the Amended Complaint, defendants are also required to serve discovery.

THE COURT:  Right.

MR. DePALMA:  45 days after the Rule 26 disclosures, plaintiffs --

THE COURT:  Right.

MR. DePALMA:  -- plaintiff has to respond to discovery.  90 days after the Rule 26 disclosure, closes fact discovery --

THE COURT:  Right.

MR. DePALMA:  -- towards class certification.

THE COURT:  Right.

MR. DePALMA:  And your Honor, can I just confirm, your Honor, that to the extent defendants do file a motion to dismiss, following our filing of the Amended Complaint, that all of these discovery dates will remain operative and discovery will move forward during the pendency?

THE COURT:  You can assume we're not staying the case.  Mr. Donovan, hopefully, you'll work this out with plaintiff, but for administrative purposes, just my experience is that after the Amended Complaint is filed, I think it makes it -- you do what you want -- but I think administratively, it's easy to withdraw your first motion to

dismiss without prejudice, revisit the issues and then file a motion to dismiss the Amended Complaint rather than incorporating arguments.  It just makes it a lot easier for Judge Simandle.  But I think that's the way you should do it. I think that's the way he prefers it.  I think it's an easier, simpler way of doing it, rather than saying, well, consider this argument at page one, but not the argument on page three.  You know what I'm saying.

MR. DONOVAN:  Yes, your Honor, I understand.

MR. DePALMA:  Your Honor, the last housekeeping matter from our point.  I assume this isn't going to be an issue, at all.  We will look at and doubtlessly execute a similar confidentiality order than that which was entered in Coyle.  But until that time and I'd like to just move as quickly as possible, I presume the defendants will not have any objection for my firm to begin reviewing the Coyle documents, even though we haven't signed the order yet.

MR. DONOVAN:  You make a representation that you're going to abide by the confidentiality, I'll accept that.

MR. DePALMA:  Of course.

THE COURT:  Was it, when we entered that order, was it Appendix S or something else?  I don't think -- was Appendix S in place when we did that order?

MR. DONOVAN:  By rough recollection, I think we comported with whatever form the Court usually requires.

40

THE COURT: Okay.

MR. DONOVAN: But rough recollection --

THE COURT: Appendix S may not have been in place back then, but if you want to use the same order, that's fine and let's get that in place, so there's no issue about reviewing documents, et cetera.

MR. DePALMA: I'm sure we'll work that out, your Honor.

MR. LAPINSKI: And just to confirm, your Honor, you're ordering that the Coyle documents and discovery be used in the Robinson case?

THE COURT: I'll put that order into place, with the consent of the parties, only for class certification purposes, nothing else.

MR. DePALMA: Yes, your Honor.

THE COURT: Not for fees, not for trial, but only for purposes of class certification.

MR. DePALMA: Yes, your Honor.

THE COURT: That's what the parties agree to, right?

MR. DePALMA: The plaintiffs consent, your Honor, yes.

MR. DONOVAN: Yes, your Honor.

THE COURT: Okay, we've covered a lot of ground. Are there any other issues that plaintiff would like to address regarding either of these two cases?

41

MR. LAPINSKI:  No, as to both, your Honor.

MR. DONOVAN:  No, your Honor.

THE COURT:  How about our interns, any questions?

MS. LOPEZ:  No, thank you, your Honor.

THE COURT:  Okay, thank you, we're adjourned.

ALL:  Thank you, your Honor.

THE CLERK:  All rise.

(Proceeding adjourned 11:56 o'clock a.m.)

* * *

CERTIFICATION


     I hereby certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.



S:/Geraldine C. Laws, CET          Date 7/12/11
Laws Transcription Service


Laws Transcription Service
48 W. LaCrosse Avenue
Lansdowne, PA 19050
(610)623-4178